Submitted upon findings of referee December 1, defendant
reprimanded December 23, 1964

## STATE OF OREGON ex rel THE SUPREME COURT v. ANDERSON

397 P. 2d 838

Lloyd G. Hammel and E. G. Foxley, Salem, for the plaintiff.

Mitchell Crew and A. William Anderson, Jr., in propria persona, Portland, for the defendant.

ROSSMAN, J.

This is a contempt proceeding which was instituted in this court upon the complaint of one Robert Vasco Keller against the accused, A. William Anderson, Jr., an attorney who had been appointed by Judge Virgil Langtry of the Circuit Court for Multnomah County to represent Keller in prosecuting an appeal to this court from a judgment which had found Keller guilty of a felony and which had sentenced him to a term in

the Oregon State Penitentiary. Keller is an indigent. The order of this court directed Mr. Anderson to show cause why he should not be held in "contempt for failure to carry out and perform the duties imposed upon him as counsel for appellant pursuant to ORS 138.500 and Rules of this Court."

The appointment of Mr. Anderson by Judge Langtry was made pursuant to ORS 138.500 which authorizes such appointments and makes provision whereby the appeal of an indigent may be prosecuted at public expense and bring to the attorney compensation for his services. In his complaint Keller accused Anderson of neglecting the duties imposed upon him by Judge Langtry's appointment and which resulted in the dismissal of the appeal by this court under Supreme Court Rule 33. After Anderson had filed his response, this court deemed it unsatisfactory and appointed the Honorable Val D. Sloper, one of the judges of the Circuit Court for Marion County, as referee to try the issues and submit findings to this court.

The findings of the referee state in part:

"Between November 13, 1963, when Defendant was appointed by Judge Langtry to represent Robert V. Keller on the appeal of his conviction and sentence and November 29, 1963, when Defendant filed the Notice of Appeal without Designation of Record (docketed in Supreme Court December 4, 1963), and between said November 29, 1963, and March 20, 1964, when the Supreme Court issued its Rule 33 Notice of Default, Defendant A. William Anderson at no time by letter, telephone, personally or otherwise conferred with, consulted or otherwise discussed the handling of the appeal with his client Robert V. Keller, an inmate of the State Penitentiary.

\*          \*          \*

"Defendant took no action between November 29, 1963, and March 20, 1964, to prosecute the appeal of Robert V. Keller.

\* \* \*

"While Defendant did not recall receiving a copy of Judge Langtry's letter to the Public Defender, dated March 13, 1964, and stated he did not have it in his file, the evidence is that it was mailed to Defendant and it will be presumed to have been delivered in due course of business.

\* \* \*

"Defendant at no time petitioned the Circuit Court to be relieved of his responsibility as court-appointed counsel for Keller.

\* \* \*

"After receiving the Supreme Court Notice of Default dated March 20, 1964, Defendant took no action to relieve himself of the Default until the Public Defender volunteered to assume responsibility for the appeal."

We have read with care the transcribed testimony and have examined the entire record. The findings are fully warranted and are adopted by this court. We shall now mention some of the incidents.

The findings state, as we have noted, that notice of appeal was given November 29, 1963. Anderson did not at any time designate the part of the record which he wished forwarded to the Supreme Court, nor did he request the court reporter to transcribe the testimony. Both services could have been performed at public expense. November 29, 1963, down to March 20, 1964, Mr. Anderson performed no work upon the appeal and did not confer with Keller except upon a single occasion when he encountered him by accident and spoke a few words to him. That meeting was unimportant. We mentioned March 20, 1964, because upon that day the Clerk of this court mailed to counsel,

including Mr. Anderson, notice under Rule 33 that in the absence of a showing this court would dismiss the appeal in thirty days, upon its own motion as abandoned. Mr. Anderson admits that he received the notice. Upon its receipt he did not mention it to Keller. Nor did he confer with the Clerk of our court nor with Judge Langtry. So far as the record discloses, he paid no attention whatever to it. He admits, however, that he realized the jeopardy into which the attempted appeal had been cast. Before there came to Mr. Anderson the notice from the Clerk of this court Anderson received two other notices which warned him that attention to the appeal was overdue.

On or about January 29 Mr. Anderson received a letter from Judge Langtry which stated that the Judge had received a complaint from Keller complaining about neglect of his case. In the letter Judge Langtry urged Anderson to take whatever action was necessary in the prosecution of the appeal. After receipt of the letter Anderson still gave the appeal no attention. As a witness he stated: "I just frankly was dilatory," and added: "The time limit wasn't up on it."

March 10, 1964, Judge Langtry received from Keller another letter of complaint. In it Keller, referring to Anderson, stated: "He has done nothing for he has not written, either to me or to prison authorities." In the letter Keller requested Judge Langtry to "expedite" the case and ascertain whether Anderson "has obtained a copy of my trial transcript. And if so, has he filed a brief?" Judge Langtry thereupon wrote to the Public Defender (Mr. Aschenbrenner) and stated:

"I am actually at a loss to understand why Mr. A. William Anderson, Jr., the attorney who was appointed to defend him, does not do something

about the case. * * * Since you have now taken over the obligations of handling post-conviction proceedings and Mr. Keller's time for appeal has expired, I am simply referring Mr. Keller's letter to you. * * *"

Judge Langtry swore that he mailed a copy of that letter to Anderson. We agree with the referee that under the circumstances we must presume that notwithstanding Anderson's negative testimony he received the copy. March 18, 1964, Mr. Aschenbrenner, upon receipt of Judge Langtry's communication, wrote to Anderson a letter which mentioned Judge Langtry's letter and inquired:

"Would you please let me know the status of this case and whether or not you are representing Mr. Keller on the appeal. If you are not representing him and if he is an indigent, it will be my duty to assist him. * * * If notice of appeal was filed within the 60 day period, I will assist him in effecting his appeal."

Mr. Anderson admitted that he received the Public Defender's letter from which we just quoted. In fact, he testified: "I won't say that I definitely thought when I received this letter that Mr. Aschenbrenner was handling the case. I did, though definitely have this opinion after speaking with Mr. Aschenbrenner maybe two weeks after this letter." Mr. Anderson made no written reply to Mr. Aschenbrenner's letter. He claims, however, that he sought several times unsuccessfully to reach Aschenbrenner on the telephone.

Mr. Aschenbrenner received Judge Langtry's letter March 15 and on March 18 wrote to Anderson the letter that we have mentioned. Aschenbrenner explained that his letter to Anderson "was just inquiring as to its (the appeal's) status" and was not an assump-

tion of its management or responsibility. Aschenbrenner testified that after he wrote the letter and received no reply he sought several times to reach Anderson on the telephone and each time failed. He testified:

"* * * finally I got hold of him, and we talked much as Mr. Anderson has testified. I asked him if he would go ahead with the case. He said he didn't want to, as I recall, he said he didn't think the fellow's case had merit. And I said I would go ahead."

The following is also taken from the record:

"The Court: At some point in the month between March 18 and April 16 you did tell Mr. Anderson that you would go ahead with the appeal?
"A Yes, sir."

Mr. Aschenbrenner testified that the telephone conversation just mentioned occurred "a few days before April 16." Anderson thought that it occurred probably in the first week of April. Aschenbrenner testified that his best recollection was that Anderson did not tell him that he had received from the Supreme Court a notice under Rule 33. His testimony was "my very best recollection is that he did not say anything to me about that. And one of the reasons I am just sure he didn't is because it came as a total surprise to us when we got the letter from Mr. Sercombe that the appeal had been dismissed on this thirty day notice provision."

Anderson did not forward to Aschenbrenner, as he freely conceded, the notice that he had received from the Clerk of our court under Rule 33. His exact words were: "No, I didn't forward that."

It will be recalled that on March 20, 1964, the Clerk of our court mailed the thirty day notice. If the telephone conversation between Anderson and Aschen-

brenner occured "a few days before April 16," in accordance with Aschenbrenner's recollection, there was scant time left for Aschenbrenner to make a showing for the preservation of the appeal. He had not been told at that time, according to his memory, that the notice had been issued. The appeal was dismissed April 21. Keller was throughout a prisoner in the Oregon State Penitentiary.

Mr. Anderson had virtually no explanation for his neglect of his duty except to employ the words "procrastination" and "dilatory." At one point he testified that other business demanded attention. But procrastination seemed to be his principal explanation.

Although Mr. Anderson claimed that he felt a sense of relief when Mr. Aschenbrenner expressed willingness to proceed with the appeal, he made no claim that he inquired of Keller whether he would be satisfied with the Public Defender as his attorney. Likewise, he did not speak to Judge Langtry who had appointed him to defend Keller. Nor did he present a motion to any court for an order relieving him of the assignment that Judge Langtry had made November 13, 1963.

The foregoing shows that Mr. Anderson, through neglect of duty, let this appeal expire. The appeal was a valuable right that belonged to Keller. Anderson was not less bound in duty to prosecute this appeal than if he had received from Keller a sizeable retainer. The expiration of the right to appeal occurred not through inadvertence such as forgetfulness but through inattention—willful inattention. Anderson's inattention to the apeal was brought to his mind with sharpness by letters and communications which he received from important sources, that is, from Judge Langtry, from the Clerk of our court, and from the Public Defender.

When the allotted time for filing a brief had expired, but while a vestige of the right of appeal still lingered on, a windfall came to Mr. Anderson in the willingness of Mr. Aschenbrenner to proceed with the appeal; but at that time Mr. Aschenbrenner did not know the jeopardy into which Keller's right had been cast by Anderson's neglect. And, if we construe the evidence correctly, Anderson did not reveal to Aschenbrenner the state of affairs.

Canon 22 of the Canons of Professional Ethics of the American Bar Association states:

"The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness."

Mr. Anderson's failure to have forwarded to Mr. Aschenbrenner the notice that he had received from the Clerk of this court stating that the appeal was subject to dismissal upon the court's motion as an abandoned appeal clearly did not conform to the demands of Canon 22. Candor and fairness should have prompted him to have made it clear to Mr. Aschenbrenner that the appeal was subject to dismissal. Candor and fairness should likewise have prompted Mr. Anderson to have sent to Mr. Aschenbrenner at once the notice which our Clerk had mailed to him.

We are aware of nothing that excuses Mr. Anderson. His disregard of duty was intentional and willful. It imperiled Keller's appeal. We believe that Mr. Anderson should be severely reprimanded. It is inattention to duty upon the part of an occasional attorney that casts discredit upon the bar. Most attorneys are diligent and give to each piece of business prompt attention. A sporadic exception such as the

one now before us induces some laymen to think ill of all lawyers. In this day when the right to counsel has achieved its proper status, the court-appointed counsel must perform his duty. He must not expect that judges and others will prod him and overcome his inclination to apathy. Having been admitted to the bar he must be his own supervisor and his own slave driver. Anderson was apparently incapable of meeting the standards that Judge Langtry and all others had a right to expect of him. The publication of this decision will be his reprimand.